FILED
JUL 3 1 2007
NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AVA RAMEY<br>3925 Emblem Corner<br>Bowie, MD 20716<br><br>    Plaintiff<br><br>v.<br><br>U.S. MARSHALS SERVICE<br>Serve:  John F. Clark, Director<br>         United States Marshals Service<br>         Washington, D.C. 20530-1000<br><br>and<br><br>RUTH HAMMOND<br>Serve: U.S. Marshals Service<br>       Washington, D.C. 20530-1000<br><br>    Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>Case: 1:07-cv-01391<br>Assigned To : Kollar-Kotelly, Colleen<br>Assign. Date : 7/31/2007<br>Description: Civil Rights-Non Employ.<br><br>JURY ACTION |

## COMPLAINT

1.     This is an action brought by Plaintiff Ava Ramey against Defendants United States Marshals Service ("USMS") and Ruth Hammond for constitutional and statutory violations arising from her termination as a Court Security Officer ("CSO") in the Twelfth Circuit.

2.     Defendants violated Plaintiff Ramey's constitutional rights under the First Amendment to freedom of speech and freedom of assembly when it removed her from her position and caused her termination as a CSO because of, at least in part, her union activity and speech.

3.     Defendants violated Plaintiff Ramey's rights under the False Claims Act, 31

1

U.S.C. §3730, when they removed her from her position as a CSO and caused her termination in retaliation for her whistleblowing activity. Defendants also violated Plaintiff Ramey's rights under the Privacy Act, 5 U.S.C. § 552a(e), when it failed to maintain records with such accuracy, relevance and completeness as is reasonably necessary to assure fairness to an individual and when it willfully and intentionally failed to collect directly from Plaintiff information that would have refuted allegations brought against her.

4. As a result of these violations, Plaintiff suffered injury in the form of lost wages and emotional and mental distress and suffering. She seeks injunctive relief in the form of reinstatement to her former position and economic and compensatory damages.

## JURISDICTION

5. This is a civil action arising under the Constitution of the United States of America and is brought pursuant to the First Amendment to the United States Constitution. Jurisdiction is proper in this Court pursuant to 28 U.S.C. §§1331, 1343 and 1367. This is also a civil action arising under the False Claims Act, 31 U.S.C. § 3730(h), and the Privacy Act, 5 U.S.C. § 552a. This Court has jurisdiction pursuant to 28 U.S.C. § 1331.

## VENUE

6. Venue is appropriate in this Court pursuant to 28 U.S.C. § 1391(e) because the events in question took place in the District of Columbia.

## PARTIES

7. Plaintiff Ava Ramey was a CSO during the period of 1997 until on or about February 16, 2006. At the time of the discharge from her position as a CSO, Plaintiff Ramey was employed by the federal contractor MVM, Inc. and was working under the judicial security

contract between Defendant USMS and MVM, Inc. providing security to the federal courthouses in the District of Columbia known as the Twelfth Circuit. She was also the President of United Government Security Officers of America Local 80 ("UGSOA Local 80"), the union serving as exclusive representative for the CSOs working in the Twelfth Circuit.

8.   Defendant USMS is the executive-branch federal agency operating under the United States Department of Justice mandated to provide security to the federal courthouses and a variety of other federal buildings. Defendant USMS provides security to the federal courthouses by contracting with private-sector security companies which provide the required security personnel including, but not limited to, CSOs.

9.   Defendant Ruth Hammond was, at all times relevant to this Complaint, a federal employee working for Defendant USMS as the contracting officer administering the judicial security contract for the Twelfth Circuit. She was responsible for maintaining a personnel file on Plaintiff Ramey and deciding to remove Plaintiff from her position as a CSO working on the Twelfth Circuit contract.

## STATEMENT OF FACTS

10.   Plaintiff Ava Ramey became a CSO in 1997 after retiring from the District of Columbia Metropolitan Police Department ("MPD").

11.   Plaintiff became the President of UGSOA Local 80 in or around April 1998. In that capacity, she represented the CSOs in collective bargaining negotiations as well as representing individual CSOs in the grievance process. At all times relevant to this Complaint, Defendants were well aware of Plaintiff's position with UGSOA Local 80.

12.   In the period of 2002 through 2003, MVM engaged in actions that caused

Plaintiff, acting in her capacity as Union President, to file numerous grievances and unfair labor practices. She was responsible for filing the following unfair labor practice charges with the National Labor Relations Board ("NLRB"): 1) Case No. 5-CA-31110, filed February 8, 2003, charging MVM discriminated against President Ramey be denying her a promotion based on her union activity; 2) Case No. 5-CA-31214, filed April 25, 2003, charging that MVM designated employees as supervisors when the NLRB had found the employees not to be supervisors under the NLRA; 3) Case No. 5-CA-31264, filed May 24, 2003, alleging that MVM unilaterally changed working conditions and refused to negotiate said changes with the Union; and 4) Case No. 5-CA-31309, filed June 2, 2003, alleging that MVM discriminated against Union officers by agreeing with another union that UGSOA Local 80 union officers would not be assigned to temporary promotions.

13. The NLRB issued a complaint based on the charges brought in Case Nos. 5-CA-31110 and 5-CA-31309. In or around December 2004, the cases were resolved under NLRB authority with Plaintiff receiving back pay and MVM posting a notice informing employees that it would not interfere in the employees' right to engage in union activity.

14. In May 2003, the USMS caused MVM to investigate Plaintiff's union activity. At the request of Deputy Marshal Rob Robeson, the USMS Contracting Officer Technical Representative ("COTR") for the Twelfth Circuit judicial security contract, Defendant Hammond alleged that Plaintiff was improperly engaging in union activity on work time and directed MVM to investigate her activities.

15. MVM investigated four instances in which Plaintiff allegedly engaged in union activity during work hours. First, MVM investigated allegations that Plaintiff engaged in

personal business when she was on approved union leave. Despite the fact that neither Defendant USMS nor MVM paid Plaintiff when she was on union leave and MVM could not establish that Plaintiff did not spend her eight (8) hours of union leave on union business after concluding her personal business, MVM concluded that Plaintiff was not truthful with her supervisors about her use of leave.

16.    Second, MVM investigated an allegation that Plaintiff filed two grievances on January 14, 2003, using the facsimile machine at the National Court building, located at 717 Madison Place, N.W., Washington, D.C. The investigation revealed that Plaintiff was on-duty the entire day at the Federal District Court building and, therefore, would not have been able to use the National Court facsimile machine. MVM decided it could not sustain this charge.

17.    Third, MVM investigated Plaintiff's use of her personal cellular telephone for union business while on duty. MVM initiated this investigation despite the fact it had issued a policy on cellular telephone usage after negotiating with UGSOA Local 80 whereby Plaintiff was allowed to use her telephone for union business during work hours. Moreover, MVM management officials routinely telephoned Plaintiff during work hours to discuss union matters.

18.    Fourth, MVM investigated a May 14, 2003, meeting between Plaintiff and UGSOA International Representative Louis Zezoff that was held in the District Court building. Plaintiff and International Representative Zezoff met in preparation for their meeting with MVM in which the investigation would be discussed which fell under the collective bargaining agreement's provision allowing union officials time to investigate grievances during work hours. She gave International Representative Zezoff a tour of the District Court building so that he would be able to adequately represent her on the issues raised by MVM's investigation.

19. On or about May 23, 2003, Plaintiff sent a written request to Defendant Hammond requesting information on the allegations so that she would be able to appropriately respond to the investigation. On June 1, 2003, Defendant Hammond prepared a memorandum to the file in which she stated that Plaintiff was not allowed to directly contact Defendant USMS and in which she indicated that she would not respond to Plaintiff.

20. MVM concluded its investigation and report on June 6, 2003, and provided it to Defendant USMS on or about June 9, 2003. Regardless of the results of the investigation, Defendant USMS had already determined on June 4, 2003, to remove Plaintiff from her CSO position in the Federal District Courthouse to a position in the District of Columbia Superior Courthouse.

21. On or about May 23, 2003, Plaintiff also filed a complaint with Noel Hillman, Chief of the U.S. Department of Justice Section on Public Integrity. She complained that Deputy Marshal Robeson was engaging in actions that violated the National Labor Relations Act ("NLRA"), 29 U.S.C. § 151 *et seq.*, and caused MVM to commit unfair labor practices in violation of the NLRA. She also stated that MVM was being investigated for fraudulent billing practices.

22. On or about July 17, 2003, Plaintiff submitted a complaint to the Department of Labor Office of Federal Contact Compliance Programs ("OFCCP") in which she made allegations of fraud and waste by MVM. Specifically, Plaintiff reported that MVM engaged in fraud on the government when it only provided three (3) hours of service weapon training, yet reported and billed Defendant USMS for eight (8) hours of training. Plaintiff also reported that MVM condoned excessive breaks and early departures by CSOs while it billed Defendant USMS

for the full hours. Additionally, Plaintiff reported that MVM implemented a change in shift starting time that resulted in too many CSOs being on duty at one time at a cost of close to $100,000 per year.

23. On or about July 28, 2003, Plaintiff received a reply from OFCCP Deputy Regional Director V.L. Harper in which it stated that it did not handle complaints of the type made by Plaintiff. Deputy Director Harper stated that Plaintiff's complaint was being forwarded to John Kraus, then-Chief of Judicial Security Contracts for Defendant USMS.

24. Upon information and belief, the U.S. Department of Justice ("DoJ") began an investigation into Plaintiff's allegations of waste and fraud that continued in 2004 and 2005. Again, based on information and belief, DoJ convened a grand jury to consider indictments arising from the same allegations of waste and fraud, among other issues.

25. Upon information and belief, Defendant Hammond had been aware of MVM's fraudulent and wasteful billing practices and had allowed it to engage in said practices.

26. In January 2006, MVM changed the shift times to eliminate the wasted manpower hours that was caused by the change in shift time implemented in 2003.

27. On or about October 5, 2005, Defendant Ruth Hammond sent a letter to MVM requesting that MVM investigate allegations that Plaintiff violated the CSO Performance Standards when, on or about September 22, 2005, Plaintiff spoke with the District of Columbia Superior Court Chief Judge about "government matters".

28. Plaintiff admitted that, on or about September 19, 2005, she had gone to the Chief Judge's Open Chambers, a time during which the Chief Judge allowed anybody working in the courthouse to speak with him. Plaintiff went during her morning break and asked the Chief

Judge about three matters on which it appeared that judges were giving CSOs directions that conflicted with established policy. Chief Judge King did not respond to the questions, but instead suggested that he would get back to her and that she should raise the issues with her superiors. Chief Judge King also volunteered to attend a roll call with the CSOs.

29.  After the meeting with Chief Judge King, Plaintiff telephoned MVM Site Supervisor Lois Epps and asked if she would be available to attend roll call the next week because the Chief Judge wanted to attend a roll call when Ms. Epps would be present. In that conversation, Plaintiff explained to Ms. Epps about her conversation with the Chief Judge and his volunteering to attend a roll call.

30.  Once she finished speaking with Plaintiff, Ms. Epps telephoned MVM Project Manager Ralph Zurita to speak with him about the matter. Mr. Zurita then telephoned the COTR, Deputy U.S. Marshal Thomas Hedgepeth, and informed him of the matter. That same day, Ms. Epps and Mr. Hedgepeth met with Chief Judge King on the matter. Mr. Hedgepeth informed Chief Judge King that he should not attend roll call and that CSOs should follow a chain of command instead of speaking with him.

31.  On September 22, 2005, Mr. Hedgepeth sent a request to Defendant Hammond to have the matter investigated. Defendant forwarded that request to MVM on October 5, 2005.

32.  MVM conducted an extremely thorough investigation of the matter. Stephen Gottrich, MVM Senior Operations Coordinator, conducted the investigation and arranged for all potential witnesses to be interviewed and for all other evidence to be reviewed. Mr. Gottrich conducted an initial investigation in October 2005 and concluded that "all of the allegations against [Plaintiff] are unfounded." He then conducted limited additional investigation and

concluded that Plaintiff only engaged in two violations of the USMS performance standards by leaving her post unattended during her shift and by being "less than candid" during the investigation. Mr. Gottrich concluded that Plaintiff did not improperly disclose official information, improperly discuss weapons, manpower or security related issues, or engage in activity that would adversely affect the USMS reputation. MVM decided that Plaintiff's infractions did not merit termination and decided she should be suspended for ten (10) days.

33. On December 15, 2005, MVM conveyed the results of its investigations to Defendant USMS along with its recommendation that Plaintiff be suspended for ten (10) days. Defendant Hammond responded to MVM on or about January 13, 2006, requesting that MVM reconsider the disciplinary action it proposed to take against Plaintiff. Upon information and belief, Defendant Hammond sought to have MVM discharge Plaintiff. On February 24, 2006, MVM replied to Defendant Hammond and reiterated that, based on the evidence gathered in its investigation, it did not find that it could support sanctions against Plaintiff beyond the suspension it proposed.

34. On or about February 16, 2006, Defendant USMS submitted a letter to MVM removing Plaintiff from the 12th Circuit Contract. According to the letter, the USMS based its decision to remove Plaintiff on unnamed "previous documented infractions and the serious nature of the most recent investigation." Pursuant to Section H-3(h) of the 12th Circuit Contract, Plaintiff had fifteen (15) days in which to provide a response to the removal. Plaintiff filed a request for information under the Freedom of Information Act ("FOIA") 5 U.S.C. § 552, to discover what the "previous documented infractions" were in order to enable her to respond.

35. In June 2006, Plaintiff received the response to her FOIA request. Defendant

9

USMS provided approximately 150 pages of documents that demonstrated the alleged previous infractions mentioned in the February 16th letter of removal. Plaintiff had never seen a number of the documents showing alleged previous infractions.

36. Based on the documents provided, Plaintiff presumed that the "previous documented infractions" that Defendant USMS cited in its removal letter consisted of the following allegations: 1) the May 14, 2003, allegation that Plaintiff conducting union business on USMS time and property and discussing USMS security measures with an UGSOA international union representative; 2) Plaintiff's July 17, 2003, whistleblowing activity to OFCCP regarding waste and abuse of use of CSO manpower; 3) Plaintiff's letters dated August 10 and 21, 2003, to Defendant Hammond and to Benigno Reyna, then Director of the USMS, reporting that the USMS directed CSOs to engage in unsafe activities with their service weapons; and 4) a letter dated January 25, 2004, allegedly from Plaintiff to UGSOA International Union President James A. Vissar apparently found on the internet web site indymedia.org in February 2006. Plaintiff also assumed that the "serious nature of the most recent investigation" involved the investigation into the September 19, 2005, conversation Plaintiff had with Chief Judge King.

37. On or about June 28, 2006, Plaintiff provided her response to Defendant's removal action. In her response, Plaintiff accused Defendant of removing her because of her union activity in violation of her First Amendment rights to freedom of speech and assembly. She also alleged that she was being removed as a result of her whistleblowing activity, activity that was protected under the FCA. Plaintiff then presented arguments regarding each specific allegation explaining why the allegations did not support removing her from the 12th Circuit contract.

38. On or about February 24, 2006, Plaintiff filed an unfair labor practice charge with the NLRB charging, among other things, that she was discriminated against based on her union activity when MVM reported inaccurate information to Defendant USMS in an effort to have Defendant USMS remove her from the 12th Circuit contract, that she was discriminated against based on her union activity when MVM reported voluminous information to Defendant USMS regarding the extent of her union activity in an effort to have Defendant USMS remove Plaintiff from the 12th Circuit contract, and that she was discriminated against based on her union membership or activity when MVM attempted to cause the constructive removal of Plaintiff from the 12th Circuit contract.

39. The NLRB investigated the unfair labor practice charge and issued a complaint that included the charges that MVM reported inaccurate and derogatory information about Plaintiff to Defendant USMS, reported voluminous amounts of information about Plaintiff's union activities to Defendant USMS, and engaged in said activities to discourage Plaintiff and others from engaging in union activities. The NLRB reached a settlement with MVM in November 2006. Under the settlement, MVM paid Plaintiff backpay for the period of February 16, 2006, until September 30, 2006, removed all mention of the removal from Plaintiff's personnel file and send a posting to all bargaining unit employees stating that it would cease and desist from the activities mentioned in the complaint, including the practices detailed in this Paragraph.

40. Also under the terms of the NLRB settlement, MVM had to write a letter to Defendant USMS requesting that it reverse its decision and allow Plaintiff to return to her CSO position with the 12th Circuit contract. MVM sent its letter to Defendant USMS on November

30, 2006. In the letter, MVM stated that, "MVM believes, as corroborated by the results of the NLRB investigation and in connection with the Settlement Agreement reached with the NLRB, that the USMS should not have directed it to remove Ms. Ramey from the contract. Therefore, MVM strongly requests that Ms. Ramey be permitted to return as a CSO on the 12th Judicial Circuit Contract should she apply for such a position."

41. On February 4, 2007, Defendant USMS sent a letter to Plaintiff replying to Plaintiff's response to its removal of her from her CSO position. Defendant USMS stated "[n]otwithstanding your letter, the U.S. Marshals Service's previous determination that Ms. Ramey is not suitable to serve as a CSO remains unchanged."

## COUNT I: VIOLATION OF FIRST AMENDMENT RIGHT TO FREE SPEECH AND ASSEMBLY

42. Plaintiff repeats and incorporates by reference the allegations in paragraphs 1 through 41 above.

43. Plaintiff Ramey exercised her rights to freedom of speech and assembly when, in her capacity of President of UGSOA Local 80, she filed numerous grievances and unfair labor practice charges and engaged in investigations related to those grievances and unfair labor practice charges. She also exercised her right to freedom of speech when she reported practices of MVM that constituted fraud, waste and abuse of government funds. Finally, Plaintiff exercised her right to freedom of speech and assembly when she attempted to speak to Chief Judge King about matters affecting the security of the District of Columbia courts.

44. In her speech involving the union, speech regarding incidents of waste, fraud and abuse of government funds, and speech regarding the security of the courts, Plaintiff was

speaking out about matters of public concern and was engaging in protected activity.

45. Defendant USMS removed Plaintiff from her position as CSO and caused her termination because of her exercise of her rights to free speech and assembly. Defendant repeatedly caused Plaintiff to be investigated for her union activity and then relied on those investigations to form the basis for its removal of her from her position.

46. In so doing, Defendant USMS willfully and purposefully violated Plaintiff's First Amendment rights and caused Plaintiff to suffer damages including lost wages and benefits, emotional and mental distress.

### COUNT II: VIOLATION OF THE FALSE CLAIMS ACT, 31 U.S.C. § 3730

47. Plaintiff repeats and incorporates by reference the allegations in paragraphs 1 through 46 above.

48. Plaintiff engaged in whistleblowing activities protected under the False Claims Act, 31 U.S.C. § 3730(h), when, in 2003, she reported activities by MVM that constituted fraud against the United States government.

49. Defendants USMS and Hammond were aware of and either ignored or condoned MVM's fraudulent billing practices. As a result, Defendants disapproved of Plaintiff's actions by which she attempted to uncover and end the fraudulent practices.

50. Plaintiff's whistleblowing activities caused, at least in part, an investigation by DoJ into MVM's practices and, in January 2006, ultimately resulted in a reversal of one of the staffing policies about which Plaintiff complained. Defendants removed Plaintiff from her position as a CSO in February 2006, approximately one month after the reversal of the staffing policy.

51. Defendants' removal of Plaintiff from her CSO position was motivated, at least in part, by her protected whistleblowing activity in violation of the False Claims Act. As a result of Defendants' wrongful actions, Plaintiff suffered lost wages and benefits, mental anguish and emotional distress.

## COUNT III: VIOLATION OF THE PRIVACY ACT, 5 U.S.C. § 552(a)

52. Plaintiff repeats and incorporates by reference the allegations in paragraphs 1 through 53 above.

53. Defendants maintained a system of records in the ordinary course of business in which documents about CSOs were kept, including but not limited to, complaints and investigations about Plaintiff. In such system of records, Defendant willfully and intentionally failed to maintain accurate, timely and complete records about Plaintiff in violation of 5 U.S.C. § 552(a)(e)(5). MVM supplied Defendants with inaccurate and derogatory information and Defendants maintained said information in its records and eventually used said information on which to, at least in part, base its decision to remove Plaintiff from the Twelfth Circuit contract.

54. Defendants willfully and intentionally failed to collect information directly from Plaintiff to the greatest extent practicable before making determinations adverse to Plaintiff when Plaintiff had information refuting the allegations. Indeed, Defendants adhered to an established policy by which Plaintiff was allowed no direct contact with them and by which all contact went through MVM. In so doing, Defendants violated the provisions of 5 U.S.C. § 552(a)(e)(2).

55. Defendants' violations of the Privacy Act resulted in adverse determinations about Plaintiff's rights and benefits under the Court Security Program. MVM supplied Defendants with inaccurate and derogatory information about Plaintiff and voluminous information about

Plaintiff's union activity and, when Defendants failed to acquire correct information, their removal of Plaintiff from the Twelfth Circuit contract rested on those inaccurate and improper documents.

56. As a result of Defendants' wrongful actions, Plaintiff suffered loss of pay and benefits and mental anguish and emotional distress.

## VI. PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that this Honorable Court:

a) Assign this case for trial at the earliest practicable date;

b) Enter judgment against defendant in favor of Plaintiff, declaring Defendant's conduct to be in violation of the First Amendment to the United States Constitution, the False Claims Act and the Privacy Act;

c) Issue an order directing Defendant USMS to reinstate Plaintiff to her prior position as a CSO immediately;

d) Issue an order directing Defendant USMS to expunge from its files any and all documents that contain inaccurate and/or derogatory information about Plaintiff and any and all documents that reference Plaintiff's union activity;

e) Award Plaintiff back pay and benefits and compensatory damages for the pain and suffering the Plaintiff experienced as a result of the Defendants violating her rights;

f) Award Plaintiff her reasonable attorney fees and costs; and

g) Award Plaintiff all other legal or equitable relief to which she may be entitled.

## VII. REQUEST FOR JURY TRIAL

Plaintiff hereby requests a jury trial.

Respectfully Submitted,

*/s/ Leslie Deak*

Leslie Deak
Law Offices of Leslie Deak
1200 G Street, N.W.
Suite 800, No. 099
Washington, D.C. 20005
Tel.:   (512) 322-3911
Fax:   (512) 322-3910

07-1391
CKK

# CIVIL COVER SHEET

JS-44
(Rev 2/01 DC)

## I (a) PLAINTIFFS
Ava Ramey

88888

(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF  88888
(EXCEPT IN U.S. PLAINTIFF CASES)

(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

Leslie Deak, Law Offices of Leslie Deak,
1200 G St., N.W., Suite 800, No. 099, Washington,
D.C. 20005, tel. (512) 322-3911

## DEFENDANTS
United States Marshals Service AND
Ruth Hammond

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT  11001
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: In land condemnation cases, use the location of the tract of land involved

Case: 1:07-cv-01391
Assigned To : Kollar-Kotelly, Colleen
Assign. Date : 7/31/2007
Description: Civil Rights-Non Employ.

JURY ACTION

## II BASIS OF JURISDICTION
(SELECT ONE BOX ONLY)

- ○ 1 U.S. Government Plaintiff
- ● 2 U.S. Government Defendant
- ○ 3 Federal Question (U.S. Government Not a Party)
- ○ 4 Diversity (Indicate Citizenship of Parties in item III)

## III CITIZENSHIP OF PRINCIPAL PARTIES (SELECT ONE FOR PLAINTIFF AND ONE FOR DEFENDANT)
(FOR DIVERSITY CASES ONLY!)

|  | PTF | DFT |  | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ○ 1 | ○ 1 | Incorporated or Principal Place of Business in This State | ○ 4 | ○ 4 |
| Citizen of Another State | ○ 2 | ○ 2 | Incorporated and Principal Place of Business in Another State | ○ 5 | ○ 5 |
| Citizen or Subject of a Foreign Country | ○ 3 | ○ 3 | Foreign Nation | ○ 6 | ○ 6 |

## IV. CASE ASSIGNMENT AND NATURE OF SUIT
(Select one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)

### ○ A. Antitrust
- [ ] 410 Antitrust

### ○ B. Personal Injury/Malpractice
- [ ] 310 Airplane
- [ ] 315 Airplane Product Liability
- [ ] 320 Assault, Libel & Slander
- [ ] 330 Federal Employers Liability
- [ ] 340 Marine
- [ ] 345 Marine Product Liability
- [ ] 350 Motor Vehicle
- [ ] 355 Motor Vehicle Product Liability
- [ ] 360 Other Personal Injury
- [ ] 362 Medical Malpractice
- [ ] 365 Product Liability
- [ ] 368 Asbestos Product Liability

### ○ C. Administrative Agency Review
- [ ] 151 Medicare Act

**Social Security:**
- [ ] 861 HIA ((1395ff)
- [ ] 862 Black Lung (923)
- [ ] 863 DIWC/DIWW (405(g)
- [ ] 864 SSID Title XVI
- [ ] 865 RSI (405(g)

**Other Statutes**
- [ ] 891 Agricultural Acts
- [ ] 892 Economic Stabilization Act
- [ ] 893 Environmental Matters
- [ ] 894 Energy Allocation Act
- [ ] 890 Other Statutory Actions (If Administrative Agency is Involved)

### ○ D. Temporary Restraining Order/Preliminary Injunction

Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

---

### ○ E. General Civil (Other)    OR    ○ F. Pro Se General Civil

**Real Property**
- [ ] 210 Land Condemnation
- [ ] 220 Foreclosure
- [ ] 230 Rent, Lease & Ejectment
- [ ] 240 Torts to Land
- [ ] 245 Tort Product Liability
- [ ] 290 All Other Real Property

**Personal Property**
- [ ] 370 Other Fraud
- [ ] 371 Truth in Lending
- [ ] 380 Other Personal Property Damage
- [ ] 385 Property Damage Product Liability

**Bankruptcy**
- [ ] 422 Appeal 28 USC 158
- [ ] 423 Withdrawal 28 USC 157

**Prisoner Petitions**
- [ ] 535 Death Penalty
- [ ] 540 Mandamus & Other
- [ ] 550 Civil Rights
- [ ] 555 Prison Condition

**Property Rights**
- [ ] 820 Copyrights
- [ ] 830 Patent
- [ ] 840 Trademark

**Forfeiture/Penalty**
- [ ] 610 Agriculture
- [ ] 620 Other Food & Drug
- [ ] 625 Drug Related Seizure of Property 21 USC 881
- [ ] 630 Liquor Laws
- [ ] 640 RR & Truck
- [ ] 650 Airline Regs
- [ ] 660 Occupational Safety/Health
- [ ] 690 Other

**Federal Tax Suits**
- [ ] 870 Taxes (US plaintiff or defendant)
- [ ] 871 IRS-Third Party 26 USC 7609

**Other Statutes**
- [ ] 400 State Reapportionment
- [ ] 430 Banks & Banking
- [ ] 450 Commerce/ICC Rates/etc
- [ ] 460 Deportation
- [ ] 470 Racketeer Influenced & Corrupt Organizations
- [ ] 810 Selective Service
- [ ] 850 Securities/Commodities/Exchange
- [ ] 875 Customer Challenge 12 USC 3410
- [ ] 900 Appeal of fee determination under equal access to Justice
- [ ] 950 Constitutionality of State Statutes
- [ ] 890 Other Statutory Actions (if not administrative agency review or Privacy Act)

| ○ G. Habeas Corpus/2255 | ○ H. Employment Discrimination | ○ I. FOIA/PRIVACY ACT | ○ J. Student Loan |
|---|---|---|---|
| ☐ 530 Habeas Corpus-General<br>☐ 510 Motion/Vacate Sentence | ☐ 442 Civil Rights-Employment (criteria: race, gender/sex, national origin, discrimination, disability, age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions (if Privacy Act)<br><br>*(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted Student Loans (excluding veterans) |
| ○ K. Labor/ERISA (non-employment) | ⊙ L. Other Civil Rights (non-employment) | ○ M. Contract | ○ N. Three-Judge Court |
| ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting & Disclosure Act<br>☐ 740 Labor Railway Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights Act)<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☒ 440 Other Civil Rights | ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☐ 190 Other Contracts<br>☐ 195 Contract Product Liability | ☐ 441 Civil Rights-Voting (if Voting Rights Act) |

V. ORIGIN
⊙ 1 Original Proceeding    ○ 2 Removed from State Court    ○ 3 Remanded from Appellate Court    ○ 4 Reinstated or Reopened    ○ 5 Transferred from another district (specify)    ○ 6 Multi district Litigation    ○ 7 Appeal to District Judge from Mag. Judge

VI. CAUSE OF ACTION (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)
Violation of First Amendment free speech and assembly, False Claims Act, 31 USC Sec. 3730(h) whistleblower action, Privacy Act violation

VII. REQUESTED IN COMPLAINT    CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23    DEMAND $ _____    Select YES only if demanded in complaint
JURY DEMAND: ☒ YES    ☐ NO

VIII. RELATED CASE(S) IF ANY    (See instruction)    ☐ YES    ☒ NO    If yes, please complete related case form.

DATE July 30, 2007    SIGNATURE OF ATTORNEY OF RECORD _____

INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I. COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III. CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV. CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI. CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII. RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.