UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

------------------------------------------------------
                                :
AVA RAMEY,                      :    CASE NO. 1:07-CV-01391
                                :
         Plaintiff,             :
                                :
vs.                             :    OPINION
                                :    [Resolving Doc. Nos. 30, 31, 41]
U.S. MARSHALS SERVICE,          :
                                :
         Defendant.             :
                                :
------------------------------------------------------

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

In this Privacy Act and retaliation case over protected speech and union activity, Plaintiff Ava Ramey, a former Court Security Officer and local union president, brings claims against Defendant U.S. Marshals Service. Pending are cross motions for summary judgment. [Doc. 30; Doc. 31.] For the following reasons, the Court **DENIES** Plaintiff's motion for partial summary judgment and **GRANTS** the Defendant's motion for summary judgment on all Plaintiff's claims.[1]

**I. Background**

In exercising its statutory responsibility to "provide for the security of" the federal courts, 28 U.S.C. § 566(a), Defendant U.S. Marshals Service contracts with private companies to employ Court Security Officers ("CSOs"). CSOs provide on-the-ground security at the courthouses—monitoring

---

[1] Because Plaintiff's Reply Brief to Defendant's Motion in Opposition of Plaintiff's Motion for Summary Judgment is twenty pages longer than allowed under Local Civil Rule 7(e), Plaintiff asks the Court for leave to extend the page limit. [Doc. 41.] Defendant opposes the motion and says Plaintiff's Reply Brief contains an exhibit which was not produced in discovery. [Doc. 42.] In granting Defendant's motion for summary judgment on all claims the Court considered Plaintiff's non-conforming Reply Brief and accompanying exhibits. The Court therefore dismisses as moot Plaintiff's motion for leave and Defendant's opposition.

-1-

the doors, patrolling the grounds, and screening visitors, for example. For CSOs in the "Twelfth Circuit", which includes the District Court and the Superior Court in the District of Columbia, the U.S. Marshals Service contracts with MVM Inc, a private security staffing company. [Doc. 31 at 2.]

MVM employed Plaintiff Ava Ramey as a CSO under the Twelfth Circuit Contract until it fired her in 2006 after the U.S. Marshals determined that she had violated security protocol and performance standards. The U.S. Marshals ordered an investigation into Ramey after learning she had made an unsolicited visit to the Chief Judge of the Superior Court during one of his weekly open-chambers sessions. [Doc. 30 at 5.] Specifically, the Marshals asked MVM to investigate whether Ramey had improperly bypassed her reporting chain of command in meeting directly with the Chief Judge and also whether she had left her post unguarded to make the visit, a violation of security protocol. [Doc. 30 at 17-18.]

As part of its investigation, MVM interviewed Plaintiff Ramey. [Doc. 30 at 6.] Ramey admitted she visited the Chief Judge and recounted the conversation as follows:

> The first question that I told [the Chief Judge] that was a concern for me was that some judges did not want you to wear your issued weapon. The second question was that some judges wanted you to remove the weapon and equipment when walking them to the subway. The third question was that if [a CSO] made an arrest inside DC Superior Court, the only place to take them is the control room where all of the cameras are for the building and that would compromise security.

[Doc. 31-18 at 2; Doc. 30-8 at 4.] Ramey also told the investigator that she visited the Chief Judge during her scheduled morning break, shortly after 10:00 am. [Doc. 36 at 12.] Security camera video, however, showed Ramey leaving her post around 9:00 am. [Doc. 30-2 at 63.]

MVM ultimately concluded that Ramey: (1) was not on an authorized break when she visited

Case No. 1:07-CV-1391
Gwin, J.

the Chief Judge and had left her post unattended; (2) failed to follow the chain of command in speaking directly to the Chief Judge; and (3) had not been candid with MVM during its investigation. [Doc. 36 at 18; Doc. 30-2 at 57.] MVM submitted these findings to the U.S. Marshals, along with a disciplinary recommendation that Plaintiff be suspended for ten days. [Doc. 36 at 18.] However, the U.S. Marshals Service, which retained the ultimate authority to make suitability determinations, disagreed with MVM's recommendation. [Doc. 36 at 19.] Given the "serious nature" of Ramey's breach combined with her "previous documented infractions", the U.S. Marshals directed MVM to remove Plaintiff Ramey from performing services under the Twelfth Circuit Contract. [Doc. 36 at 19.] After Ramey refused a different assignment, MVM terminated her. [Doc. 36 at 3.]

Against this backdrop, Plaintiff brings three counts against the U.S. Marshals Service. First, she alleges that the Defendant directed MVM to remove her from the Twelfth Circuit Contract in violation of her First Amendment rights to speech and assembly. [Doc. 1 at 12-13.] Second, she alleges that the Defendant retaliated against her for whistleblowing in violation of the False Claims Act, 31 U.S.C § 3730(h). [Doc. 1 at 13-14.] And third, she alleges that the Defendant's directive to remove her from the Contract was based on inaccurate information and an incomplete investigation, a violation of the Privacy Act, 5 U.S.C. § 552a(e). [Doc. 1 at 14-15.]

## II. Legal Standard

### *A. Summary Judgment*

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Tao v. Freeh*, 27 F.3d 635, 638 (D.C. Cir. 1994).

Case No. 1:07-CV-1391
Gwin, J.

Under the summary judgment standard, the moving party bears the "initial responsibility of informing the district court of the basis for [its] motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits which [it] believe[s] demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In response, the non-moving party must "go beyond the pleadings and by [its] own affidavits, or depositions, answers to interrogatories, and admissions on file, 'designate' specific facts showing that there is a genuine issue for trial." *Id.* at 324 (internal citations omitted).

Although a court should draw all inferences from the supporting records submitted by the nonmoving party, the mere existence of a factual dispute, by itself, is insufficient to bar summary judgment. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To be material, the factual assertion must be capable of affecting the substantive outcome of the litigation; to be genuine, the issue must be supported by sufficient admissible evidence that a reasonable trier-of-fact could find for the nonmoving party. *Laningham v. U.S. Navy*, 813 F.2d 1236, 1242-43 (D.C. Cir. 1987).

"Mere allegations or denials in the adverse party's pleadings are insufficient to defeat an otherwise proper motion for summary judgment." *Williams v. Callaghan*, 938 F.Supp. 46, 49 (D.D.C. 1996). Instead, while the movant bears the initial responsibility of identifying those portions of the record that demonstrate the absence of a genuine issue of material fact, the burden shifts to the non-movant to "come forward with 'specific facts showing that there is a *genuine issue for trial*.'" *Id.* at 587 (citing Fed. R. Civ. P. 56(e)) (emphasis in original).

### III. Discussion

#### *A. Plaintiff's First Amendment Claims*

Case No. 1:07-CV-1391
Gwin, J.

Plaintiff Ramey says her removal from the Twelfth Circuit Contract occurred in retaliation for exercises of her First Amendment rights to speech and assembly. She cites three events that prompted the U.S. Marshals to retaliate against her: (1) she spoke to the Chief Judge on behalf of herself and other CSOs as their union representative about matters affecting court security; (2) she filed grievances and unfair labor practice charges in her capacity as a union president; and (3) she accused MVM of wasting government funds. Responding, the Defendant says it is entitled to summary judgment because Plaintiff's conversation with the Chief Judge was not protected under the First Amendment and also because no sufficient evidence shows that Plaintiff's prior union, grievance, and whistleblowing activity were factors in its decision to remove her from the Contract for violating security protocol. [Doc. 30 at 38.]

"The government needs to be free to terminate both employees and contractors for poor performance." *Bd. of County Comm'rs v. Umbehr*, 518 U.S. 668, 674 (1996). However, "[t]he First Amendment's guarantee of freedom of speech protects government employees from termination *because of* their speech on matters of public concern." *Id.* at 675 (emphasis in original). Mindful of the government's dual roles as a sovereign and employer, for a government employee's or contractor's speech to have First Amendment protection, the employee or contractor must have (1) spoken as a citizen and (2) addressed matters of public concern. *Wilburn v. Robinson*, 480 F.3d 1140, 1149 (D.C. Cir. 2007). Courts impose these same threshold requirements to First Amendment retaliation suits brought by "hybrid" government contractors—private employees of private companies with public contracts. *See, e.g., Castro v. County of Nassau*, 2010 WL 3713185, at *2 (E.D.N.Y. Sept. 13, 2010) (applying standard First Amendment retaliation analysis to a private security guard employed by a private security staffing company contracted to work at a public

Case No. 1:07-CV-1391
Gwin, J.

school).

In determining whether a government employee spoke as a citizen on a public issue, the court's analysis "must take into account the content, form, and context of the employee's speech." *LeFande v. District of Columbia*, 613 F.3d 1155, 1159 (D.C. Cir. 2010) (internal quotation omitted). "[W]hen public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." *Garcetti v. Ceballos*, 547 U.S. 410, 421 (2006). Whether a government employee spoke as a citizen on a public issue is a question of law for the court to decide. *Wilburn*, 480 F.3d at 1149.

In this case, there is no genuine dispute that Ramey's statements to the Chief Judge were made in the course of her duties as a CSO. The content of Ramey's speech—questions about CSOs carrying weapons and the detention of suspects in the courthouse control room—relates to her job. This is true even though Ramey had no formal duty—indeed, it was a violation of MVM's chain-of-command protocol—to speak with the Chief Judge. As the D.C. Circuit has recognized, "it would be incongruous to interpret *Garcetti*, a case concerned with allowing the government to control its employees within their jobs, as giving broader protections to disobedient employees who decide they know better than their bosses how to perform their duties." *Thompson v. District of Columbia*, 530 F.3d 914, 918 (D.C. Cir. 2008). As to the context of the conversation, Plaintiff, in her full uniform, approached the Chief Judge during his weekly open-chambers session (an opportunity for court employees, not union officials, to discuss matters relating to the operation of the courthouse). Thus, the Court finds that in light of Plaintiff's own admissions regarding the content and context of her conversation with the Chief Judge, the speech at issue here "owe[d] its existence to [her]

Case No. 1:07-CV-1391
Gwin, J.

professional responsibilities," *Garcetti*, 547 U.S. at 411, and is not protected by the First Amendment. Accordingly, the Court does not reach the remaining factors to establish a retaliation claim. *See Pearson v. District of Columbia*, 644 F. Supp. 2d 23, 42 (D.D.C. 2009) ("Where an employee is simply performing his or her job duties . . . the Court need not—and should not—proceed to balance the competing interests.").

Recognizing this weakness, Plaintiff attempts to salvage her claim by asserting that her past union, grievance, and whistleblowing activities create an independent basis for her suit apart from her visit with the Chief Judge. In support, Plaintiff says that "[t]he president of a union is a public position" and that her "repeated and regular union activity constitutes activity protected by the First Amendment." [Doc. 37-1 at 24, 26.] Responding, the Defendant says Plaintiff's past protected activity was a nonfactor in its decision to remove her from the Twelfth Circuit Contract. Instead, Defendant continues, it relied on MVM's investigation that determined Plaintiff had violated security protocol and performance standards. [Doc. 30 at 37.]

In order to prevail on a First Amendment retaliation claim, a government employee must demonstrate that his or her protected activity was a substantial or motivating factor in prompting the retaliatory act. *Wilburn*, 480 F.3d at 1149. Although causation is normally a question of fact for the jury, a plaintiff opposing summary judgment must show that there is evidence "from which a reasonable jury could find the required causal link between the protected [activity] . . . and the allegedly retaliatory actions." *Williams v. Johnson*, 701 F. Supp. 2d 1, 17 (D.D.C. 2010).

In this case, Plaintiff has failed to produce evidence that would enable a jury to conclude that there was a causal connection between her union, grievance, and whistleblower activity and her removal from the Twelfth Circuit Contract. To be sure, the record suggests that Ramey was an

Case No. 1:07-CV-1391
Gwin, J.

active union representative, regularly filing grievances and unfair labor practices charges against MVM "that cost the company significant amounts of money." [Doc. 37-1 at 23.] Yet Ramey does not allege that MVM, the entity that conducted the investigation, retaliated against her—indeed, MVM recommended that Ramey be suspended, not removed. In order to prevail on her First Amendment claim, Ramey must demonstrate not just that she engaged in protected speech or assembly but that it was a "substantial" or "motivating" factor in the U.S. Marshals's decision to remove her from the Contract. Relying on the report of investigation, the Marshals concluded Ramey abandoned her post and violated chain-of-command protocol and that "these violations alone warranted [her] removal." [Doc. 30 at 34.] Thus, because the record does not show that the U.S. Marshals considered Ramey's union, grievance, and whistleblowing activity when they ordered her removal from the Contract, the Court grants summary judgment to the Defendant on Plaintiff's First Amendment retaliation claim.

### B. Plaintiff's False Claims Act Claim

In Count II of her complaint, Plaintiff Ramey says that the Defendant U.S. Marshals Service directed MVM to remove her from the Twelfth Circuit Contract because she engaged in whistleblowing activity, a violation of the False Claims Act, 31 U.S.C § 3730(h). [Doc. 1 at 13-14.] In its motion for summary judgment, Defendant says Ramey's False Claims Act cause must fail because Ramey did not properly exhaust administrative remedies under the Civil Service Reform Act, Pub.L. No. 95-454, 92 Stat. 1111, that are a jurisdictional prerequisite to suit in federal court, [Doc. 30 at 39.] *See Harris v. Bodman*, 538 F. Supp. 2d 78, 82 (D.D.C. 2008). In her opposition, Ramey does not once mention the False Claims Act, the Civil Service Reform Act, or her whistleblowing activity. [Doc. 36.]

Case No. 1:07-CV-1391
Gwin, J.

Accordingly, because the Defendant informed the Court of the basis for its motion and Plaintiff failed to come forward with facts or law showing that there is a genuine issue for trial, the Court grants summary judgment to the Defendant on Plaintiff Ramey's False Claims Act claim.

### *C. Plaintiff's Privacy Act Claim*

In Count III of her Complaint, Plaintiff Ramey says that the U.S. Marshals Service violated Section 552a(e)(5) of the Privacy Act when it directed her removal from the Twelfth Circuit Contract based on the result of MVM's investigation into her visit to the Chief Judge. [Doc. 1 at 14.] And because the Marshals relied on MVM's arguably incomplete investigation that did not include "information from Plaintiff to the greatest extent practicable," Plaintiff continues, the Defendant also violated Section (e)(2). Finally, in her motion for partial summary Judgment, Plaintiff says, for the first time, that Defendant collected and maintained information on her protected First Amendment speech and assembly in violation of Section (e)(7) of the Privacy Act.

The Court first considers Plaintiff Ramey's contention that, in relying on MVM's report of investigation, the U.S. Marshals violated Section 552a(e)(5) of the Privacy Act. The Privacy Act requires that each agency keeping a system of records must maintain those records with "such accuracy, relevance, timeliness, and completeness as is reasonably necessary" to assure fairness to an individual. 5 U.S.C. § 552a(e)(5). As the D.C. Circuit has explained, a plaintiff must establish four elements to recover under this section:

> (1) [s]he has been aggrieved by an adverse determination; (2) the [agency] failed to maintain [her] records with the degree of accuracy necessary to assure fairness in the determination; (3) the [agency's] reliance on the inaccurate records was the proximate cause of the adverse determination; and (4) the [agency] acted intentionally or willfully in failing to maintain accurate records.

*Chambers v. U.S. Dep't of Interior*, 568 F.3d 998, 1006 (D.C. Cir. 2009) (quoting *Deters v. U.S.*

Case No. 1:07-CV-1391
Gwin, J.

Parole Comm'n, 85 F.3d 655, 657 (D.C. Cir. 1996)). The Act, however, allows only for the correction of ascertainable facts, not the correction of opinions or judgments. Mueller v. Winter, 485 F.3d 1191, 1197 (D.C. Cir. 2007) (internal quotation omitted). To that end, while "the Privacy Act allows for the amendment of factual or historical errors[,] . . . [i]t is not, however, a vehicle for amending the *judgments* of federal officials or . . . others . . . as those judgments are reflected in records maintained by federal agencies." Kleiman v. Dep't of Energy, 956 F.2d 335, 337 (D.C. Cir. 1992) (emphasis in original).

The gravamen of Plaintiff's 552a(e)(5) claim is that she did not abandon her post when she met with the Chief Judge; therefore, the U.S. Marshals's records which concluded that she did are not accurate. As part of its two investigations into the incident, MVM reviewed courthouse security footage and interviewed witnesses. According to the first investigation, "Ramey admitted visiting the Chief Judge's chambers" but insisted she was on her 10:00 am break. [Doc. 30-2 at 47.] Because of these conflicting reports, MVM conducted a second investigation. The second report concludes:

> Morning breaks are scheduled for 10:00am. CSO Ramey was seen [on security camera video] away from her post for at least 36min. prior to 10:00am. This is a violation of security procedures . . . . The secretary for the Chief Judge . . . was asked . . . if there are any times that the Chief Judge's open house session lasts until 10:00am. [She] immediately responded, 'Oh no. Maybe until 9:00am but, 10:00am oh NO!'

[Doc. 30-2 at 63.] With this information in hand, the U.S. Marshals determined that Ramey "is not suitable to serve as a CSO . . . ." [Doc. 31-36 at 1.]

Plaintiff, of course, maintains that she was on a scheduled break and, therefore, the report of investigation is inaccurate. In support, she points to corroborating testimony from another CSO who

-10-

Case No. 1:07-CV-1391
Gwin, J.

told the investigator he did not see Ramey abandon her post and from the Chief Judge's law clerk who said the Chief Judge conducted a swearing-in ceremony at 9:30 am that morning. [Doc. 31 at 9.] These bits of information, however, do not create a material issue that MVM's reports are inaccurate. First, with regards to the other CSO's corroborating testimony, after MVM confronted him with "additional information and evidence" which was inconsistent with his original statement, he told the investigator "he would not be making any further statements regarding the investigation." [Doc. 31-26 at 1.] Second, the law clerk's statement is not inconsistent with the report's findings because security footage places Ramey away from her post as early as 9:02 am. [Doc. 30-2 at 63.] The Court therefore finds that Plaintiff has not set forth specific facts showing a genuine issue for trial on the question of whether the U.S. Marshals relied on inaccurate information in ordering Plaintiff's removal from the Twelfth Circuit Contract.

Plaintiff's tag-along claim that the Marshals relied on an investigation that did not include "information from Plaintiff to the greatest extent practicable" is equally unpersuasive. "Each agency that maintains a system of records shall . . . collect information to the greatest extent practicable directly from the subject individual when the information may result in adverse determinations about an individual's rights, benefits, and privileges under Federal programs." 5 U.S.C. § 552a(e)(2). "[T]he specific nature of each case shapes the practical considerations at stake that determine whether an agency has fulfilled its obligations under the Privacy Act to elicit information directly from the subject of the investigation to the greatest extent practicable." *Cardamone v. Cohen*, 241 F.3d 520, 528 (6th Cir. 2001). In any event, however, "reasonable questions about a subject's credibility cannot relieve an agency from its responsibility to collect that information first from the subject." *See Waters v. Thornburgh*, 888 F.2d 870, 873 (D.C. Cir. 1989).

Case No. 1:07-CV-1391
Gwin, J.

In her complaint, Plaintiff describes the investigation as "extremely thorough." [Doc. 1 at 8.] Furthermore, MVM's investigation is replete with Ramey's statements. For example: "[CSO] Ramey admitted visiting the Chief Judge's Chambers . . ."; "[CSO] Ramey interjected that she did not invite the Judge to roll call . . ."; "[Ramey] added that, as president of Local 80, she knows that protocol is."; "[CSO] Ramey appeared to become a little upset and said, 'Oh. It went that far?' She continued, 'I'm president of Local 80. I know my job. I do a pretty good job. This is an insult.' Her voice cracked. She added, 'I know CSOs go to Chief Judge King, but whenever something comes up with Ava Ramey, it's always blown out of proportion.'"; "[CSO] Ramey said she had been union president (of Local 80) since 1998, and that she didn't engage in discussion of government information."; "She stated that, 'Lois Epps is a liar' and is always calling (PM) Ralph Zarita with comments like, 'Do you know what Ava Ramey is doing now?'"; "[CSO] Ramey disputed the statement in Mrs. Epps memo file . . ."; "[CSO] Ramey said that, three months ago, 'the CSOs sent a letter . . ."; "[CSO] Ramey said she never raised her voice, that she always talks loudly, and that it was [a Marshal] who ended the meeting." [Doc. 30-2 at 47, 50, 54.] Against this voluminous record, it is beyond dispute that MVM gave Plaintiff a fair shake at telling her side of the story. Accordingly, because there exists no genuine issue for trial on the question of whether the U.S. Marshals collected information to the greatest extent practicable directly from Ramey, the Court grants summary judgment to the Defendant on this claim.

Finally, Plaintiff's claim that the Defendant collected and maintained information on her First Amendment activity in violation of Section (e)(7) of the Privacy Act fails for two reasons. First, to the extent this claim encompasses the Defendant's collection and maintenance of information on Plaintiff's meeting with the Chief Judge, the Court has already foreclosed this claim. Recall,

-12-

Case No. 1:07-CV-1391
Gwin, J.

Ramey's statements to the Chief Judge were made in the course of her duties as a CSO and receive no First Amendment protection. And second, to the extent her Section (e)(7) claim encompasses the Defendant's collection and maintenance of information regarding MVM's 2003 investigation into allegations she was using courthouse equipment to conduct union business, this claim is time-barred based on the Privacy Act's two-year statute of limitations. 5 U.S.C. § 552a(e)(5); *see Ramirez v. Dep't of Justice*, 594 F. Supp. 2d 58, 63 (D.D.C. 2009). The Court therefore grants summary judgment to the Defendant on Plaintiff's Privacy Act claims.

### IV. Conclusion

The Court finds that no dispute in genuine issue of material fact or law exists in this case, entitling the Defendant to summary judgment. Thus, for the foregoing reasons, the Court **DENIES** Plaintiff's motion for partial summary judgment and **GRANTS** the Defendant's motion for summary judgment on all Plaintiff's claims.

A separate Order shall issue this date.


Dated: December 13, 2010               s/      *James S. Gwin*
                                       JAMES S. GWIN
                                       UNITED STATES DISTRICT JUDGE